**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

    v.

ANDRÉS NÚÑEZ,                    CRIM. NO. 09-221 (PG)

    *Defendant.*

## OPINION AND ORDER

Pending disposition by this Court is a motion to withdraw a plea of guilty filed by defendant Andrés Núñez ("Núñez"), along with its supplement. Dockets No. 137 and 194. The Government has filed an opposition to said request. Docket No. 150. Because the Court finds that Núñez has failed to raise enough facts to establish a fair and just reason for vacating his guilty plea, the Court **DENIES** his motion without a hearing.

### I.    BACKGROUND

On June 25, 2009 a Grand Jury rendered a four count indictment against Núñez and sisters Rosa and Ana Piedrahita (hereinafter "Defendants"), alleging that they aided and abetted, as well as conspired with each other, in the concealment of assets belonging to the Chapter 11 bankruptcy estate of debtor ALR Investment Corp. d/b/a *Farmacia El Señorial* (hereinafter "ALR" or "the debtor"), in violation of Title 18, United States Code, §§ 152(1), 371 and 2. See Docket No. 2. The gist of the indictment consisted of charging Defendants with concealing approximately $200,000 of estate property through the use of covert bank accounts, which were unauthorized by the Bankruptcy Court. Furthermore, by failing to file monthly operating reports with said court, the Government denounces that Defendants were able to conceal another $700,000 of estate property, which were moving through the court-approved, Debtor in Possession (DIP) accounts. The Bankruptcy Court, which never had an opportunity to learn of the existence of these funds, ended up dismissing ALR's petition. See In re ALR Investment Corp. d/b/a Farmacia el Señorial, Case No. 03-06571 (JMD)(Bankr.D.P.R.). These events spurred the current criminal prosecution now before this Court.

After the required procedures took place, the Court set a jury

trial date for October 13, 2010. Two days before trial, all three defendants filed motions for change of plea, requesting they each be allowed to plead guilty to the charges against them. Docket No. 89 and 90. The trial date was vacated and on October 22, 2010, Núñez pled guilty to count one of the indictment pursuant to a plea agreement. See Dockets No. 100 and 104. For the purposes of sentencing, he agreed to "knowingly concealing approximately $30,000 to $69,000 in accounts receivable belonging to ALR." Docket No. 104 at 8. Based on this amount and other factors, the parties agreed to recommend a sentencing guidelines calculation of 13. See id. at 3. Assuming a Criminal History Category I, this yielded a guideline imprisonment range of 12-18 months. Id. At sentencing, the plea agreement called for the parties to recommend a split sentence of imprisonment and home confinement at the lower end of the stipulated guideline range. Id.

On February 24, 2011, four months after Defendant pled guilty, the United States Probation Office ("USPO") disclosed an amended presentence investigation report ("PSR"). See Docket No. 115. According to the PSR, Núñez accepted responsibility as stipulated in the government's version of facts. In particular, "[h]e expressed being repentant because it was something [that] should have never happened, and he could have stopped it." Id. The PSR also awarded Defendant a three level reduction for his acceptance of responsibility. See id. at 17.

The PSR, however, was less condescending with Núñez with respect to the remaining guidelines computations. While the Plea Agreement called for an imprisonment range of 12-18 months, the PSR's new loss calculations called for a range of 30-37 months.[1] Id. at 21. In addition, the PSR recommended that Núñez be ordered to provide one of the main creditors in the case, Filencio Valentín, with a restitution of $123,707.42. Id. at 22.

On March 1, 2011, Núñez's attorney, Lydia Lizarribar ("Lizarribar"), filed a motion to reschedule the sentencing hearing. See Docket No. 117. The stated reason for the continuance was so that Núñez could lodge several objections to the PSR. The Court granted the motion

---

[1] While the Plea Agreement's recommended guidelines range placed Núñez within Zone B, which recommends a split sentence of home confinement and imprisonment, the new range favored by the PSR now placed Núñez within Zone D of the guidelines, which recommends imprisonment for the whole sentence.

and reset the sentencing hearing for April 8, 2011.

On March 28, 2011 attorney Lizarribar petitioned the Court for leave to withdraw as legal representative, which the Court granted. See Dockets No. 123 and 127. The following day, on March 29, 2011, attorney Rafael Castro-Lang ("Castro-Lang") appeared for Núñez. See Docket No. 125. Following this, Núñez filed a couple of motions requesting continuances for the sentencing hearings, asking for additional time to file formal objections to the PSR. See Docket No. 126 and 131. The Court granted both motions. Dockets No. 130 and 134.

On May 16, 2011, the USPO issued an Amended PSR ("Amended PSR"). The Amended PSR contained several changes, including additional victims and a revised statement of Defendant's acceptance of responsibility. See Docket No. 135. As for the victims, the Amended PSR identified four additional victims/creditors who were seeking approximately $80,262.12 in restitution. Id. at 16-17. Four days after the disclosure of the Amended PSR, Núñez filed the motion to withdraw plea of guilty currently pending before the Court. Docket No. 137.

In his motion seeking the Court to allow him to withdraw his plea of guilty, Núñez argues that he was unaware that co-defendant Rosa Piedrahita intended to file a bankruptcy petition, and that in any case he was not required to file monthly operating reports, as this was Rosa Piedrahita's obligation. Núñez also claims that he lacked a specific intent to defraud the bankruptcy court, as the failure to file the operating reports and the opening of the unauthorized First Bank account were both undertaken under the advice of ALR's bankruptcy lawyer. As to his personal, but unauthorized Caribe Federal account, Núñez states that the same was opened with the purpose of paying ALR's creditors, including himself, for the loans he had made to ALR. In all, Núñez claims his actions were carried out with the consent of his bankruptcy lawyer, and ultimately done for the benefit of ALR's creditors, reason for which he should be cleared of all charges.

## II.   DISCUSSION

Federal Rule of Criminal Procedure 11 provides that a defendant may withdraw his or her guilty plea prior to sentencing for any "fair and just reason." Fed. R. Crim. P. 11(d)(2)(B). The First Circuit has

identified several factors to determine whether there is a "fair and just reason" to permit a withdrawal of a guilty plea, "the most significant being whether the plea was *voluntary, intelligent and knowing*, within the meaning of Rule 11." United States v. Pulido, 566 F.3d 52, 57 (1st Cir. 2009)(emphasis in original). Other factors include: (1) the plausibility and weight of the reasons offered by the defendant; (2) the timing of the request; (3) whether there is a serious claim of actual innocence; (4) whether the parties reached (or breached) a plea agreement; and (5) any countervailing prejudice to the government if the defendant is allowed to withdraw his plea. See United States v. Sousa, 468 F.3d 42, 46 (1st Cir.2006); Marrero-Rivera, 124 F.3d at 347. The Court, mindful that it is the defendant who carries the burden of persuasion in showing a fair and just reason, United States v. Isom, 85 F.3d 831, 834 (1st Cir. 1996), concludes that the above factors strongly weigh towards upholding the guilty plea.

### A. Núñez's Plea was Voluntary, Intelligent and Knowing

Núñez claims that his plea was not entered intelligently as he was under pressure and "followed his lawyer's advice that because the government had extended a very good plea offer he should accept it as a risk avoidance measure." Docket No. 137 at 6. As such, he claims his plea meets the standard of "legally suspect." Id.

The First Circuit has identified three 'core concerns' of Rule 11: 1) absence of coercion; 2) the defendant's understanding of the charges; and 3) the defendant's knowledge of the consequences of the guilty plea. Isom, 85 F.3d at 835. During the plea colloquy, the following exchange took place between the Court and the Defendants, including Núñez:

> THE COURT: Has anybody made any promises to you that are not included in the Plea Agreement or offered you any matter of monetary value to get you to plead guilty?
>
> (All three defendants responded in the negative.)
>
> THE COURT: Has anybody mentioned to you what specific sentence I will impose on each one of you?
>
> (All three defendants responded in the negative.)
>
> ....
>
> THE COURT: It means that if I were to impose a sentence that

> turns out to be higher than any one you might be expecting, that reason alone will not be grounds for the Court to allow you to withdraw your plea of guilty.
>
> Do you understand that?
>
> (All three defendants responded in the affirmative.)
>
> ....
>
> THE COURT: In paragraph 17 [of the Plea Agreement] each one of you is representing to the Court that you are entering into the Plea Agreement without compulsion, threats or any other promises from the United States Attorneys' office or any of its agents, and that you acknowledge that no threats have been made against you to induce you to plead guilty and that each one of you is pleading guilty freely and voluntarily <u>because in fact you are guilty.</u>
>
> Is that correct?
>
> (All three defendants answered in the affirmative.)

Docket No. 193 at 11-12, 26 (emphasis added). As can be gleaned from the above, none of the Defendants asserted that they felt threatened or forced to plead guilty to Count I of the indictment. What's more, Defendants were well aware that the Court was not obliged in any way to impose the sentence recommended in the plea agreement, and they expressed that no one had made any promises as to what kind of sentence the Court would have meted out to them in exchange for pleading guilty. At the change of plea hearing, the Court also explained in detail the consequences of entering a guilty plea to Count I of the indictment, to the acknowledgment of all Defendants. <u>Id.</u> at 7-10. As Núñez has not alleged any core or structural deficiencies in the Rule 11 proceeding, the Court is entitled to give weight to his assurances in open court. <u>See United States v. Torres-Rosario</u>, 447 F.3d 61, 67 (1st Cir.2006).

Moreover, this Court agrees with the Government that Núñez's experience as a retired supervisory federal law enforcement officer, and as a former border patrol and local police agent, enabled him to fully understand the consequences of entering a guilty plea. <u>See United States v. Padilla</u>, 351 F.3d 594, 598 (1st Cir. 2003). Although Núñez claims his plea "meets the standard of 'legally suspect'" because he entered it as a risk avoidance measure, he cites to no legal authority to back up such claim. Thus, at first glance, it appears that Núñez entered his plea

voluntarily, knowingly and intelligently.

> **B. The Plausibility and Weight of Núñez's Reasons and Núñez's Claim of Actual Innocence are Insufficient to Allow Withdrawal of his Guilty Plea.**

As part of his motion to withdraw his plea of guilty, Núñez included various documents, which he claims support his assertion of innocence. Among them are: (1) a statement under penalty of perjury; (2) a statement of former counsel Lizarribar; (3) a memorandum of activity, dated October 1, 2010, prepared by special agent Edgardo Rosado, relating to an interview of ALR bankruptcy attorney José Cintrón (Cintrón's ROI); (4) a transcript of a hearing before the Bankruptcy Court on June 7, 2004, where a bankruptcy judge decided that dismissal of the bankruptcy petition benefitted creditors; and (5) polygraph test results from January 2010.

    i.   <u>Núñez's affidavit</u>

Núñez claims that the above documents clearly establish that he was not responsible for ALR's bankruptcy filing, and as such, none of the actions related to said filing can be attributed to him. In his affidavit, Núñez maintains that he became involved in the bankruptcy proceedings after they commenced, as ALR owed him "a substantial amount of money." However, he does admit to opening the unauthorized First Bank Account as well as depositing ALR checks to his personal Caribe Federal account. Núñez claims the funds were then used to pay creditors of ALR, including salary payments to co-defendant Ana Piedrahita and that he received no economic benefit from the transactions. Núñez even goes so far as admitting that he used the proceeds of the ALR checks deposited into his personal Caribe Federal account to pay himself for loans he had made out to ALR. Even assuming that Núñez's contention that he derived no economic benefit from these transactions, courts have stated that using concealed proceeds of estate property to pay debts does not negate a fraudulent intent in such concealment. <u>See</u> <u>United States v. Klupt</u>, 475 F.2d 1015, 1018 (2nd Cir. 1973); <u>Kalin v. United States</u>, 2 F.2d 58, 59 (5th Cir. 1924); <u>and</u> <u>Corenman v. United States</u>, 188 F. 424, 110 C.C.A. 341 (C.C.S.D. N.Y. 1911)

Moreover, Núñez's deviation of funds to pay select creditors (including himself) is undoubtedly a crass violation of the Bankruptcy

Code's policy against "preferences" in the payment of creditors.[2] Although it might well be true that creditors were paid from the accounts, it is no less true that these creditors were the fortunate ones singled out by Defendants for payment; among them co-defendant Ana Piedrahita, for whom mortgage payments were canceled using property of the estate. The remaining creditors, which apparently fell from Defendants' graces, were left to seek distribution from the assets that were actually disclosed to the bankruptcy court. Thus, based on the above and the fact that in his affidavit Núñez appears to admit having knowledge of the existence of the DIP accounts when the transactions took place, a reasonable jury could find that Núñez had the requisite intent to conceal assets from the Bankruptcy Court, in order to pay himself, Ana Piedrahita, and other favored creditors before anyone else. Thus, there is an adequate factual basis to sustain Núñez's guilty plea.

In his affidavit, Núñez also claims that the deposits to both the First Bank and Caribe Federal accounts were done with the approval of attorney Cintrón, who never informed Defendants that said actions were illegal. In short, Núñez seems to rely on an advice of counsel defense to cleanse any fraudulent intent on his part. The Court is unconvinced, however, as it is well settled that a criminal defendant "is not immunized from criminal prosecution merely because he consulted an attorney in connection with a particular transaction." United States v. Rice, 449 F.3d 887, 896-97 (8th Cir. 2006). The First Circuit has also expressed skepticism on the advice of counsel defense in the context of a criminal prosecution for bankruptcy fraud. In Boroff v. Tully (In re Tully), 818 F.2d 106 (1st Cir. 1987), a debtor failed to indicate on his bankruptcy forms that he owned certain promissory notes and other assets. The debtor's counsel testified that he had advised the debtor to omit the information, but the court found the testimony irrelevant. The court stated: "[i]t is well settled that reliance upon advice of counsel is, in this context, no defense where it should have been evident to the debtor that the assets ought to be listed in the schedules." Id. at 111.

---

[2] In general, a "preference" occurs when a debtor makes a payment or other transfer of property to one or more creditors and not to others of the same class. A preference is a form of favoritism prohibited by the Bankruptcy Code (11 U.S.C. § 547) when a debtor is in bankruptcy. Subject to certain exceptions, a trustee can recover such payments.

Likewise, here it should have been evident to Núñez that favoring himself and other creditors over others through the use of unauthorized accounts was improper.

Lastly, Núñez claims that the failure to file the monthly operating reports was predicated on attorney Cintrón's strategy to achieve dismissal of the bankruptcy case. He argues that since it was Rosa Piedrahita who carried the obligation of filing the reports, said failure to file cannot be attributed to him, and consequently no fraudulent intent to conceal assets existed. The fact that during the change of plea hearing Defendants objected to the statement of facts prepared by the government, and managed to strike the word "knowingly" from the phrase "knowingly failed to file operating reports," reinforces the argument, according to Núñez. The Court, however, perceives the argument as unavailing, and finds that despite the modification to the statement of facts, there was an adequate basis for accepting the guilty plea.

The Court believes that the circumstances of this case point to the inescapable conclusion that Núñez had the requisite intent to shield assets from the Bankruptcy Court. As explained earlier, Núñez was aware of the existence of the bankruptcy proceeding and the authorized DIP accounts, but nonetheless chose to deposit property of the estate into unauthorized accounts in order to secure payment for himself, Ana Piedrahita and other favored creditors before the rest of the creditors participating in the bankruptcy proceedings. Moreover, while the failure to file the operating reports may have been done pursuant to their attorney's instructions, none of the Defendants have made any showing that they attempted to disclose the existence of the unauthorized accounts, nor the monies moving through them, to the bankruptcy court or the U.S. Trustee. The Court must also take into account that Defendants already pleaded guilty to Count I of the indictment, which charged all Defendants with <u>conspiracy</u> to commit bankruptcy fraud. Docket No. 2. Viewing the circumstances and evidence in this case as a whole, a reasonable jury could find that Núñez had the requisite intent to conceal assets from the Bankruptcy Court. See <u>United States v. Thayer</u>, 201 F.3d 214 (3rd Cir. 1999)(Where officer of debtor corporation argued there was no evidence showing that he knew he had a duty to file operating expenses reports on behalf of debtor corporation, court held that section 152

"penalizes concealment of assets, not failure to file expense reports," and found that there was sufficient evidence from which the jury could have concluded that officer's use of estate funds to make payments on a condominium held in his name was an attempt to hide estate's assets from the Bankruptcy Court and the creditors.)

### ii. Sworn Statement of Lydia Lizarribar

In her sworn statement, attorney Lizarribar states that Núñez entered his guilty plea out of fear and as a risk avoidance measure after the government furnished him with a very low plea offer. She also recounts that Núñez has maintained his innocence as to the charges against him at all times during the proceedings. The first statement is belied by Núñez's own expressions at the change of plea hearing, where he effectively stated to the Court that he had received no promises as to what kind of sentence he would have received by pleading guilty. The second statement also fails to find support in the record, given that in the several motions Núñez filed between the time he pleaded guilty and the time he filed his motion to withdraw the plea, no mention was made of any claim of innocence. Moreover, Lizarribar's statement fails to explain why, believing he was innocent from the beginning, Núñez waited seven months to withdraw his guilty plea.

### iii. Cintrón's ROI

The ROI of attorney Cintrón proffered by Núñez is another attempt to establish that the failure to file monthly operating reports was not intentional on his part, but rather a product of Cintrón's legal strategy. Having disposed of this argument earlier, the Court sees no reason to address it again here. The ROI does show, however, that Núñez had an insider role in ALR, as he and the other co-defendants paid Cintrón's retainer fee, and according to Cintrón he acted as "a part of ALR" and maintained a financial interest in it.

### iv. Transcript of the Bankruptcy Hearing

Núñez also offers a transcript of the hearing before the Bankruptcy Court where said court dismissed ALR's bankruptcy petition. He claims that dismissal of the petition was a testament to the success of Cintrón's strategy, and was one that benefitted creditors. However, the

idea that creditors were benefitted from the dismissal is cast into doubt by the Amended PSR's new loss calculations, which shows that Defendants' actions did result in a detriment to several creditors identified as victims there. This Court will also express no view as to how the bankruptcy proceedings might have fared had there been full disclosure by Defendants of all ALR accounts.

     v. Results of a Polygraph Test

Lastly, Núñez brings to the attention of the Court the results of a polygraph test taken on January 16, 2010, which he claims corroborate his claim of innocence. However, it is the general policy of this Court not to admit the results of polygraph examinations into evidence. See United States v. Rodríguez-Berríos, 573 F.3d 55, 73 (1st Cir. 2009); United States v. Black, 78 F.3d 1, 7 (1st Cir. 1996). The Court also fails to comprehend why, having the results of these tests since January 2010, Núñez pleaded guilty to the charges against him, and then waited seven months to recant his guilty plea.

    **C. The Timing of the Request, the Reaching of a Plea Agreement, and the Prejudice to the Government all Disfavor Allowing the Withdrawal of the Plea.**

With respect to the remaining factors to be considered in assessing the merits of a motion to withdraw a plea of guilty, the Court finds that they heavily weigh towards rejecting Núñez's change of plea request.

Núñez pled guilty on October 22, 2010 but did not file his motion to withdraw guilty plea until almost seven months later, on May 20, 2011. In United States v. Parrilla-Tirado, 22 F.3d 368, 373 (1st Cir. 1994), the First Circuit stated that delayed requests for withdrawing a guilty plea "are generally regarded with disfavor" and that "[t]he rule of thumb is that the longer a defendant waits before moving to withdraw his plea, the more potency his motion must have in order to gain favorable consideration." Although Núñez claims that any delay in filing his motion to withdraw guilty plea is due to his having to retain new counsel, the truth is that his new attorney arrived in this case on March 29, 2011, more than five months after entering his guilty plea. Having found that Núñez's arguments are unavailing, the Court must also find that Núñez's long delay in filing the motion also cuts sharply against granting his

request.

Further, the Court reads into Núñez's motion a belated attempt to conjure up a trial, where Núñez's main act will revolve around his advice of counsel defense. Notwithstanding, on September 28, 2010, the Government filed a motion for disclosure of advice of counsel defense under Rule 16, seeking, among other relief, that Defendants disclose their intent to rely on the advice of counsel defense before October 5, 2010, seven days prior to the scheduled commencement of trial. Docket No. 72. Although the Court granted the motion, Defendants never announced that they would rely on the defense. Thus, Núñez cannot now seek to withdraw his guilty plea in order to resurrect his advice of counsel defense, when the time for doing so has already passed.

The fact that the parties arrived at a plea agreement, where all Defendants acknowledged that the Court has authority to impose any sentence up to the maximum imposed by statute, in this case five years, also weighs towards disallowing a change of plea at this stage. In addition, the government would suffer prejudice as the events in this case are almost nine years since past, and their witnesses' memories are no doubt clouded.

### III. CONCLUSION

For the foregoing reasons, Núñez's request to withdraw his plea of guilty is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, February 24, 2012.

*s/ Juan M. Pérez-Giménez*
**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**